■ In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Real Property Designated as Lot 10 in Block 439, and Others, in the Borough of Manhattan. FIFTH AVENUE COACH LINES, INC., Respondent. (And Four Other Proceedings.) — Sixth partial and final decree, entered December 17, 1969, modified, on the law and the facts, reducing the aggregate of the awards for intangible assets to the sum of $10,721,325, and decree otherwise affirmed, without costs and without disbursements. The Court of Appeals rejected the prior findings of Special Term, affirmed by this court, of no value for the categories of intangibles consisting of coach routes; operating systems, procedures and records; franchises, operating rights and permits; and certain classes of trained personnel (executive and maintenance). The Court of Appeals concluded that there was sufficient evidence in the record to sustain awards for such items. The court remitted the matter to Special Term for further proceedings in accordance with its opinion with the direction in effect that the determination as to value was to be based upon a reproduction cost less depreciation formula. (*Matter of City of N. Y.* [*Fifth Ave. Coach Lines*], 22 N Y 2d 613.) On the remand to Special Term, the parties stipulated to submit the matter upon the entire record, evidentiary and documentary, of the two previous trials, without further testimony or exhibits. As Special Term appropriately noted: "The City has again failed to produce any expert testimony to negate that presented by the claimants; nor has the City presented any expert testimony to support its arguments in deprecation of the claims herein or in support of the depreciation the City claims should be applied. * * * "The City's continued argumentative attempts to evade the clear mandate of the Court of Appeals cannot be favored in the Court's view. The Court of Appeals did not remand this case, a second time, for a third retrial, in order for Special Term to make a token award on the items remanded in light of the standards mandated by that Court. The Court of Appeals has clearly stated that the Claimants are to be fairly compensated for their going concern intangible assets." It is true, as Special Term has pointed out, that the claimant did present some credible evidence tending to support a fixation of value for each of the

intangible items involved (and, in fact, the Court of Appeals has in effect so held). On the other hand, the city, still contending in the main that the record does not justify awards for the particular items, has failed to present any considerable proper evidence within the guidelines laid down by the Court of Appeals. Furthermore, it should be noted that the city's briefs submitted on this appeal are not particularly helpful in that they fail to analyze the evidence in support of such valuation as the city may claim to be established for each of the items. We have concluded that the findings, conclusions and awards of Special Term are properly supported as to all items with the exception of trained personnel (executive and maintenance), personnel records and coach routes (layout and development). As to these particular items, the record requires substantial modifications of the awards, resulting in reductions of the aggregate award. *Trained Personnel (Executive)*. Under this category, the claimants have received awards totaling $347,000 to cover the cost of selecting and training executive personnel predicated upon 12 months salary, plus 25% fringe benefits, for 17 executives involved. We find, however, that the average cost of recruitment of an executive amounts to 20% of his yearly salary and that on the average only six months' training period is required. We conclude therefore that a proper allowance for the cost of selecting and training executive personnel is the sum of $242,900. In fixing present value, however, there is a depreciation factor to be taken into consideration and we conclude that the total cost should be depreciated 25%. The result is an award in this category of $182,175. *Trained Personnel (Maintenance)*. Under this category, the claimants have received an award of $197,300 for the cost of training 421 janitors, bus washers, cleaners, watchmen, flagmen, firemen and building maintenance men. Considering the nature of these jobs and the available labor market, we conclude that an allowance of about $470 per man (several weeks wages) to train him in the simple job which he would assume is unrealistic and grossly excessive. Particularly, we note that this court has heretofore approved awards of only $200 to $300 a man to teach mechanics and mechanics' helpers. Furthermore, there is involved a depreciation factor, for many of these men, when trained, do continue on the job for years. We conclude that an allowance of $200 as the cost for training each man is properly supported and that total cost should be depreciated 25%. The result is an award in this category of $63,150. *Personnel Records*. Under this category, the claimants have received an award of $1,059,000 to cover the cost of assembling and maintaining the personnel records of 6,229 active employees. There being no credible evidence to the contrary, we accept the claimants' figure as a proper estimate of cost, but conclude that the item must be reduced to the extent of 50% because of depreciation properly chargeable against such cost. There was credible testimony that the reproduction cost of records, to properly reflect present value, was to be subjected to a reasonable allowance for depreciation. Claimants' expert testified that he took no depreciation because the records continue to be of value until the time employees actually leave the service of the company and because he considered only the records pertaining to employees in service at time of condemnation. These grounds, however, do not justify the failure to give due consideration to the depreciation factor. Of course, up-to-date records assembled over the years have a present value, but the extent of such value necessarily varies with each employee depending on the period of time his records will be of use to the employer. For instance, where an employee 55 years old has worked 25 years or more and is approaching retirement, the value of his records for the purpose of evaluating and classifying his services is nearly exhausted. Here, of the 6,229 employees acquired by the city, 43% were over 50 years old and 69% over 40. The average age of all employees was estimated

at 47 years and claimants' expert testified that involved was a 17⅓ years record for each employee. We conclude that the record supports a finding that, on the whole, the period of service of employees to the time of taking will at least equal the properly estimated future period of service of the employees. On the basis of the record, we conclude that the cost of reproduction as estimated by claimants' expert should be depreciated to the extent of 50% to ascertain present value. This reduces the total award in this category to $529,500.

Routes (Layout and Development). The award of $730,000 for layout of routes was premised upon an estimate of the average cost of $10,000 each to lay out 73 routes. The award of $6,130,000 as the reasonable cost of development of the routes (or about $70,000 for each route) was based upon the testimony of claimants' experts that such cost is appraised by estimating the "loss in earnings until the point at which the route reaches its potentiality" and that the norm for figuring such cost is "to use 10 per cent of a years gross revenues as being indicative of this loss in earning power or revenue". There being no credible contrary evidence, we accept the respective figures authenticated by the claimants' experts as sufficiently establishing the reasonable reproduction costs of the particular items but conclude that, in fixing proper awards, the figures are to be depreciated. Certainly, no route, as once laid out and developed, exists forever. Coach or surface transit routes are abandoned, or revised or redeveloped, for many reasons, including a shifting of population or trading centers, change in traffic regulations such as the one-waying of streets, installation or revision of subway or other competitive routes, etc., thereby destroying or lessening the usefulness or profitability of a particular coach or other surface route. There is evidence that from time to time a considerable number of routes were revised. It also appears that, at the time of taking, it had been recommended that certain routes should be abandoned as not being properly productive, that certain routes should be created, and others merged. We conclude that to properly reflect present value, the estimated cost of these intangibles should be depreciated 35% resulting in the reduction of the lay-out award to $474,500, and the route development award to $3,984,500. Finally, the findings and conclusions of Special Term are rejected and vacated insofar as inconsistent herewith, and new findings and conclusions made as herein indicated. Settle order on notice to properly apportion the reduction as between Fifth Avenue Coach Lines, Inc., and Surface Transit, Inc., with a fixation of the total awards, as modified, to be paid to each. Concur — Eager, J. P., McGivern, Markewich and Steuer, JJ.